# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-2533
_____

United States of America

*Plaintiff - Appellee*

v.

Carrie April Martin, formerly known as Carrie April Winkler

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids
_____

Submitted: April 8, 2024
Filed: May 1, 2024
[Unpublished]
_____

Before SMITH, WOLLMAN, and GRASZ, Circuit Judges.
_____

PER CURIAM.

Carrie April Martin pleaded guilty to bank fraud, a violation of 18 U.S.C. § 1344(2), and aggravated identity theft, a violation of 18 U.S.C. § 1028A(a)(1). She was sentenced to 36 months' imprisonment on the fraud count and 24 months' imprisonment on the identity theft count, to run consecutively. See 18 U.S.C.

§ 1028A(b) (consecutive sentence for aggravated identity theft). Martin appeals, arguing that she did not use sophisticated means to commit bank fraud and that the district court[1] thus erred by applying the enhancement set forth in U.S. Sentencing Guidelines § 2B1.1(b)10(C). We affirm.

Martin's father held the power of attorney for his elderly mother, L.W., and his aunt, I.O., and was a signatory on their credit union accounts. After obtaining checks drawn on those accounts, Martin wrote 194 checks to herself, signing her father's name on each. Martin also used her father's personal identifiers and account information to opt out of receiving paper statements and to enroll in electronic statements, which were delivered to Martin's email account.

Martin deceived a senior branch office administrator at a national investment firm into giving her access to I.O.'s investment account. Martin thereafter transferred funds into I.O.'s credit union account, drawing down the investment account from $180,000 in January 2013 to less than $7,500 by October 2017. Martin also sold I.O.'s stock in a local energy company. In a series of transactions through an online transfer agent, Martin transferred $115,000 into I.O.'s credit union account. Martin depleted the transferred funds by writing checks to herself. L.W. died in December 2014. I.O. died in October 2017, mere weeks after learning that Martin had stolen her life savings. Martin ultimately transferred into her personal bank account no less than $5,910 from L.W.'s credit union account and no less than $411,000 from I.O.'s credit union account.

Martin argues that the district court clearly erred in finding that her offense involved sophisticated means. Although the commentary defines "sophisticated means" as "especially complex or especially intricate offense conduct pertaining to

[1]The Honorable C.J. Williams, United States District Judge for the Northern District of Iowa.

the execution or concealment of an offense," U.S.S.G. § 2B1.1 cmt. n.9(B), we have said that "[r]epetitive and coordinated conduct, though no one step is particularly complicated, can be a sophisticated scheme." United States v. Jenkins, 578 F.3d 745, 751 (8th Cir. 2009) (quoting United States v. Finck, 407 F.3d 908, 915 (8th Cir. 2005)).

Martin wrote scores of checks to herself for more than three years, each time signing her father's name. She lied to gain access to I.O.'s investment account and transfer assets to I.O.'s credit union account. She created and used an online account to sell I.O.'s stock and transfer proceeds to the credit union account. She depleted the funds in L.W.'s and I.O.'s accounts and concealed her scheme by enrolling I.O. in electronic statements. Viewed as a whole, the district court did not clearly err in finding that Martin's offense "was notably more intricate than that of the garden-variety [offense]." Id. (alteration in original) (quoting United States v. Hance, 501 F.3d 900, 909 (8th Cir. 2007)); see United States v. Lamb, 776 F. App'x 383, 384 (8th Cir. 2019) (no clear error in finding that scheme involved sophisticated means when, over the course of four-and-a-half years, defendant stole "$184,466.01 from her employers, primarily by writing checks to herself from company bank accounts and then editing QuickBooks entries to make it look like the checks were for legitimate business expenses").

The judgment is affirmed.

_____